# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. LINCOLN and MARY O. LINCOLN, | CIVIL ACTION NO. 3:12-CV-576 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| MAGNUM LAND SERVICES, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are motions to dismiss filed by Defendant Belmont Resources, LLC ("Belmont") (Doc. 18), Defendant Magnum Land Services, LLC ("Magnum") (Doc. 21), and Defendants Chesapeake Appalachia, LLC and Chesapeake Energy Corporation (collectively "Chesapeake") and Statoil USA Onshore Properties Inc. ("Statoil") (Doc. 13). This diversity action concerns a disputed oil and gas lease covering land owned by Plaintiffs Robert and Mary Lincoln. Plaintiffs allege state law quiet title and slander of title claims against the moving Defendants as well as Defendant Sinclair Oil & Gas Co. ("Sinclair"). For the reasons below, the moving Defendants' motions will be granted.

## BACKGROUND

### I. Factual Allegations

Plaintiffs allege the following in their First Amended Complaint (Doc. 11, Ex. B):

At all relevant times prior to 2008, Plaintiffs owned in fee simple three separate parcels of land, totaling approximately 191 acres, in Tunkhannock Township, Wyoming County, Pennsylvania ("the Property"). (*Id.* at ¶ 12.) In or about February 2008, Magnum offered in writing to lease Plaintiffs' oil and gas rights and explore for gas on the Property. (*Id.* at ¶ 39.) On or about February 26, 2008, Plaintiffs made a counteroffer by significantly revising, signing, and returning the written oil and gas lease to Magnum. (*Id.* at ¶¶ 40–42.)

On or about March 26, 2008, Mr. Lincoln advised two Magnum agents, Paul Burgess

and Scott Schaffer, by phone that he was withdrawing the counteroffer and confirmed with them that Plaintiffs had not received any documentation indicating that Magnum accepted their counteroffer. (*Id.* at ¶ 43.) The following day, he e–mailed Burgess, Schaffer, and a Magnum supervisor to follow up on and confirm the prior day's conversation. (*Id.* at ¶ 44.) On March 31, 2008, Schaffer called Plaintiffs to inquire into how Plaintiffs' changes to the lease would affect Magnum's rights and ask if Plaintiffs would accept a higher signing bonus from Magnum in exchange for dropping their amendments to the lease and signing it in its original form . (Doc. 11, Ex. B at ¶¶ 45–46.) Although it never accepted the counteroffer or contested Plaintiffs' revocation of the counteroffer, Magnum sent Plaintiffs a check, dated May 14, 2008, for $71,362.50. (*Id.* at ¶¶ 47–49.) Plaintiffs voided the check and returned it to Magnum by registered mail on May 17, 2008. (*Id.* at ¶ 50.)

On August 26, 2008, Plaintiffs leased their oil and gas rights to the Property to Chief Exploration and Development LLC ("Chief"). (*Id.* at ¶ 17.) Chief recorded the lease with the Wyoming County Recorder of Deeds on October 2, 2008, but surrendered the lease on January 30, 2009. (*Id.* at ¶¶ 17, 20.)

On August 3, 2009, Magnum recorded Plaintiffs' February 2008 counteroffer as an oil and gas lease ("the Lease") with the Wyoming County Recorder of Deeds. (Doc. 11, Ex. B at ¶ 14.) Magnum subsequently assigned the Lease, which notes a "lease date" of February 26, 2008 and states that it is effective as of October 17, 2008, to Belmont on August 24, 2009. (*Id.* at ¶ 21.) This assignment was recorded on September 30, 2009. (*Id.*) Belmont then assigned 50% of its interest in the Lease to Sinclair on August 24, 2009; this assignment was recorded on November 9, 2009. (*Id.* at ¶¶ 23–24.) Sinclair and Belmont assigned their portions of the Lease to Chesapeake; these assignments were recorded on November 16, 2009 and November 18, 2009, respectively. (*Id.* at ¶¶ 25–26.) Chesapeake then assigned 32.5% of its interest in the Lease to Statoil, which was recorded

on May 19, 2010. (Doc. 11, Ex. B at ¶¶ 27–28.)

In September 2009, Mr. Lincoln visited the office of the Wyoming County Recorder of Deeds and learned that Magnum had recorded and assigned the Lease. (*Id.* at ¶¶ 107–109.) He believed that the Lease and assignments cast a cloud on Plaintiffs' title and would prevent them from joining the Wyoming County Landowners Group, which was negotiating a collective oil and gas lease with Chesapeake at the time. (*Id.* at ¶¶ 101–111.)

On September 13, 2010, Plaintiffs filed an Affidavit Affecting Title to Real Estate with the Wyoming County Recorder of Deeds. (*Id.* at ¶ 62.) Plaintiffs' Affidavit, which clarified that the Lease was actually a counteroffer that was revoked prior to Magnum recording the Lease, put Defendants on notice of the Lease's false nature and that they were clouding Plaintiffs' title to the Property. (*Id.* at ¶¶ 62–64.) On December 13, 2010, Plaintiffs mailed the Affidavit to Chesapeake, along with a request that Chesapeake sign a quitclaim deed granting its interests in the Property and its oil and gas back to Plaintiffs. (*Id.* at ¶ 65.)

On September 28, 2011, Chesapeake and Statoil, who were the current lessees of the Property's oil and gas rights under the Lease, filed a Release and Surrender of Oil and Gas Lease ("Release") regarding the Property with the Wyoming County Recorder of Deeds. (Doc. 11, Ex. B at ¶¶ 29–31.) In light of this Release, no other Defendants have a basis to assert a claim to the Lease or the Property's oil and gas rights. (*Id.* at ¶ 32.)

Plaintiffs bring quiet title and slander of title claims against Defendants. Defendants have created and continue to create a cloud on Plaintiffs' title to the Property by knowingly and maliciously filing various instruments of record asserting false claims of title to the Property. (*Id.* at ¶¶ 1–2, 59–60, 68–69.) These instruments are false because they omit material facts—that the Lease recorded by Magnum is invalid and nothing more than a revoked counteroffer. (*Id.* at ¶¶ 3–4.) Magnum knew that the Lease was invalid at the time of recording, and all other Defendants were notified of the Lease's invalidity by Plaintiffs'

3

Affidavit. (*Id.* at ¶¶ 59–64.) Yet, each Defendant that has not filed a Release[1] continues to knowingly and maliciously publish false statements daily by not removing its instruments from the public record kept in the Wyoming County Recorder of Deeds. (Doc. 11, Ex. B at ¶¶ 66–69.) Plaintiffs seek: a declaration that the Lease and any assignment concerning it is and always was invalid; a declaration that they own the Property and any subsurface mineral, oil, coal, and natural gas rights in fee simple; and compensatory damages, punitive damages, special damages, and attorney's fees, interests, and costs. (*Id.* at 19–20.)

## II. Procedural History

On December 30, 2011, Plaintiffs filed a verified Complaint in Action to Quiet Title in the Court of Common Pleas of Wyoming County, Pennsylvania, naming Magnum, Belmont, Chesapeake, Statoil, and Sinclair[2] as Defendants. (Doc. 1, Ex. B.) On March 29, 2012, with the consent of all Defendants, Chesapeake and Statoil filed a Notice of Removal to this Court. (Doc. 1.) That same day, Plaintiffs filed their First Amended Complaint in Action to Quiet Title in state court. (Doc. 11, Ex. F.) Chesapeake and Statoil then filed a Second Amended Notice of Removal on April 24, 2012. (Doc. 11.)

On April 26, 2012, Chesapeake and Statoil (Doc. 13), Belmont (Doc. 18), and Magnum (Doc. 21) moved to dismiss Plaintiffs' First Amended Complaint. Plaintiffs' brief in opposition (Doc. 25) and the moving Defendants' reply briefs (Docs. 26–28) were timely filed. Accordingly, the motions have been fully briefed and are ripe for disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to

---

[1] Belmont filed a Release concerning the Property in February 2012. (*Id.* at ¶ 33.)

[2] A notice of appearance has not been filed on Sinclair's behalf in this matter.

4

determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a

5

reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## **ANALYSIS**

### **I. Plaintiffs' Quiet Title Claim**

Plaintiffs request that the Court issue an order declaring them to be the sole owners in fee simple absolute of the Property, including its subsurface mineral, oil, coal, and natural gas rights, and that the Lease and any subsequent assignments thereof was invalid. They seek this remedy through an action to quiet title pursuant to Pennsylvania Rule of Civil Procedure 1601(b), which provides that such an action may be brought:

> (1) to compel an adverse party to commence an action of ejectment; (2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title, or interest in land; (3) to compel an adverse party to file, record, cancel, surrender or satisfy of

record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or (4) to obtain possession of land sold at a judicial or tax sale.

Pa. R. Civ. P. 1061(b). The purpose of an action to quiet title under Rule 1061 is to remove clouds on title and resolve conflict over interests in property. *White v. Young*, 186 A.2d 919, 921 (Pa. 1963); *see also Nat'l Christian Conference Ctr. v. Schuylkill Twp.*, 597 A.2d 248, 250 (Pa. Commw. Ct. 1991).

Chesapeake, Statoil, and Magnum[3] contend that Plaintiffs' quiet title claim must be dismissed because Plaintiffs' allegations show that there is no cloud on their title to the Property. (Doc. 14 at 17–18; Doc. 22 at 9–11.) The Court agrees. Plaintiffs allege in their First Amended Complaint that Chesapeake and Statoil, the only lessees under the Lease prior to their Release, surrendered all rights and interests they had under the assignment of the Lease and do not continue to claim any interest in the Property. (Doc. 11, Ex. B. at ¶¶ 29–32, 66.) Plaintiffs also allege that because Chesapeake and Statoil filed their Release, no other Defendants have a basis to assert a claim to the Lease. (*Id.* at ¶ 32.) Based on these facts, which the Court must accept as true at the motion to dismiss stage, there is no cloud on Plaintiffs' title to the Property. Accordingly, Plaintiffs' quiet title claim against all Defendants will be dismissed with prejudice. The Court will not grant Plaintiffs leave to amend this claim, as permitting a curative amendment would be futile here. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

---

[3] Plaintiffs note in their First Amended Complaint that they have dropped their quiet title claim against Belmont because it filed a Release regarding the Property in February 2012. (Doc. 11, Ex. B at ¶¶ 33–35.) Although Plaintiffs state that they still seek damages from Belmont in connection with a quiet title claim, it would clearly be inappropriate for the Court to allow Plaintiffs to do so. "'Damages' is a word of art meaning something paid in recompense for infringement of plaintiff's legal right by defendant's liability-creating conduct." *Hodges v. Rodriguez*, 645 A.2d 1340, 1348 n.13 (Pa. Super. Ct. 1994) (citing *Miller v. Weller*, 288 F.2d 438, 439 (3d Cir. 1961)). As Plaintiffs no longer allege that Belmont engaged in any liability-creating conduct with respect to the quiet title claim, they can no longer seek damages from Belmont for that claim.

**II. Plaintiffs' Slander of Title Claim**

The intentional tort of slander of title—which is also known as defamation of title, disparagement of title, and injurious falsehood—involves the "false and malicious representation of the title and quality of another's interest in goods or property." *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (quoting *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 701 (Pa. Super. 1979)). Slander of title is actionable where:

> (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Id.* at 246 (citing *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 761 A.2d 553, 555–56 (Pa. Super. 2000); Restatement (Second) of Torts § 623(A)).

The moving Defendants argue that Plaintiffs' slander of title claim is time-barred here. (Doc. 14 at 8–17; Doc. 19 at 6–9; Doc. 22 at 6–9.) The statute of limitations for a slander of title claim is one year from publication. See 42 PA. CONS. STAT. § 5523(1); *see also Pro Golf Mfg.*, 809 A.2d at 246 (holding that slander involving property is subject to the same statute of limitations as slander involving a person). "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge [or] mistake . . . do not toll the running of the statute . . . ." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). A "publication" is the communication of an allegedly defamatory or slanderous statement by the defendant to a third person, *see Sobel v. Wingard*, 531 A.2d 520, 522 (Pa. Super. 1987), and each republication of such a statement is a separate cause of action—*i.e.*, each republication triggers a new one year statute of limitations. *Bloch v. Temple Univ.*, No. 94-2378, 1995 WL 263541, at *3 (E.D. Pa. 1995).

The facts, as alleged by Plaintiffs, show that Magnum recorded the Lease with the Wyoming County Recorder of Deeds in August 2009 (Doc. 11, Ex. B at ¶ 14) and Mr. Lincoln became aware of the Lease and assignments thereof at some point in

September 2009 (*Id.* at ¶¶ 107–09). In September 2010, several months after the final assignment of the Lease (*Id.* at ¶¶ 21–28), Plaintiffs filed their Affidavit Affecting Title to Real Estate with the Wyoming County Recorder of Deeds (*Id.* at ¶ 62). Although Plaintiffs filed their Complaint in Action to Quiet Title in state court in December 2011 (Doc. 1, Ex. B), they did not raise a slander of title claim until their First Amended Complaint in Action to Quiet Title in March 2012 (Doc. 11, Ex. B). Because Plaintiffs brought their slander of title claim against Defendants more than one year after the Lease or any assignment thereof had been recorded—and more than one year after learning of any such recording—the claim is time-barred by the applicable statute of limitations. Accordingly, Plaintiffs' slander of title claim against all Defendants will be dismissed with prejudice. The Court will not grant Plaintiffs leave to amend this claim, as permitting a curative amendment would be futile here. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## **CONCLUSION**

For the above stated reasons, the moving Defendants' motions to dismiss (Docs. 13, 18, 21) will be granted. Plaintiffs' First Amended Complaint in Action to Quiet Title (Doc. 11, Ex. B) will be dismissed in its entirety with prejudice. Plaintiffs will not be given leave to amend their complaint, as permitting curative amendment would be futile here.

An appropriate order follows.

June 5, 2013 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge